UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | Case No. 2:14-cr-00328-KJD-NJK |
| | ) | |
| vs. | ) | ORDER AND |
| | ) | REPORT & RECOMMENDATION |
| GLEN HUNSBERGER, et al., | ) | |
| | ) | (Docket No. 181) |
| Defendants. | ) | |

Pending before the Court is Defendant Glen Hunsberger's Motion to Suppress and Request for Franks Hearing, filed on August 22, 2016.[1] Docket No. 181. On September 9, 2016, the United States filed a response.[2] Docket No. 187.

This action was referred to the undersigned magistrate judge for a report of findings and recommendation pursuant to 28 U.S.C. 636(b)(1)(B) and Local Rule IB 1-4. The Court has

---

[1] Co-defendants Jason Monteiro, Anthony Navarro, and Jennifer Peskett filed motions for joinder to Defendant Hunsberger's motion to suppress. Docket Nos. 182, 183, 184. On August 29, 2016, the Court granted all three joinder motions. Docket No. 185.

[2] As Defendant Hunsberger filed his motion on August 22, 2016, the United States' response was due on September 8, 2016. *See* Docket No. 181. It was filed on September 9, 2016, and the United States certified that it was timely filed. Docket No. 187 at 1. As a result, Defendant Hunsberger asks the Court to disregard the United States' response as untimely. Docket No. 188 at 2. The United States submits in a separate filing that, as the co-defendants' joinders were filed on August 24 and 29, 2016, and the Court granted them on August 29, 2016, the United States' response was actually due September 15, 2016. Docket No. 194 at 2. Therefore, the United States submits, its response was timely filed. *Id*. Defendant Hunsberger moves to strike the United States' separate filing, as an unauthorized surreply. Docket No. 196. The Court in its discretion **DENIES** Defendant's motion to strike.

The United States' response was filed only one day after the original deadline, even if the United States is incorrect about the joinders extending its response time. In the interest of resolving issues on their merits, the Court in its discretion considers it fully. See Fed.R.Crim.P. 45(b)(1).

considered Defendant Hunsberger's Motion, the Joinders of Defendants Monteiro, Navarro, and Peskett, the United States' Response, Defendant Hunsberger's Reply, and the Joinders of Defendants Navarro, Monteiro, and Peskett. Docket Nos. 181, 182, 183, 184, 187, 188, 189, 190, 192.

I. **BACKGROUND**

The four defendants, along with co-defendant Manuelle Alkeine, are charged with one count of conspiracy to manufacture and possess with the intent to distribute a controlled substance within 1000 feet of an elementary school, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), and (b)(1)(C), and Title 21, United States Code, Section 846. Additionally, Defendants Hunsberger, Alkeine, and Peskett are charged with one count of money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h). Docket No. 161. The portion of the case at issue in the motion pending before the Court revolves around a package that was placed in the United States mail. Docket No. 181 at 2.

  **A.**  **Search Warrant**

On September 11, 2013, United States Magistrate Judge George Foley, Jr. issued a search warrant for the package. Docket No. 181 at 2. The issuance of the search warrant was supported by an affidavit, sworn to by United States Postal Inspector (PI) Daniel Carbonetti. Docket No. 181-1. PI Carbonetti described the package as a white Express Mail box, weighing approximately 4 pounds, and measuring approximately 14"x12"x3". *Id*. at 3. He stated that the parcel bore a handwritten Express Mail Label, and tracking number EU909087397US. PI Carbonetti stated that the package was addressed to Casual Male, 21 Faunce Corner Road, N. Dartmouth, MA 02747, with a return address of PDQ Printing, 3820 S. Valley View, Las Vegas, NV 89103. *Id*. Finally, PI Carbonetti stated that the package was affixed with $39.95 in postage, postmarked September 10, 2013, and mailed from Las Vegas, NV 89117. *Id*.

PI Carbonetti stated that experience and intelligence gathered by the U.S. Postal Inspection Service (USPIS) have shown that Express Mail and Priority Mail "are frequently utilized by drug traffickers for shipping controlled substances or proceeds/payments." *Id*. He also indicated the reasons for this utilization - speed, expedited service, reliability, free package tracking service, and the perceived minimal chance of detection. *Id*.

1  PI Carbonetti stated that, on July 31, 2013, he executed three search warrants on three
2 separate parcels that were each mailed from a different city in Ohio to Las Vegas. *Id*. at 3-4. He
3 listed the recipients of the parcels as Jennifer Peskett, Mann Alkeine, and Kylas Cochet, and stated
4 that each package contained $15,000 in cash hidden inside of a DVD player. *Id*. at 4. Peskett's
5 address on the parcel sent to her was her residence - 4400 S. Jones Blvd, Unit 3086, Las Vegas, NV
6 89103. *Id*. PI Carbonetti stated that Peskett has a "criminal history for Possession of Marijuana for
7 Sale and Cultivating Marijuana." *Id*. On August 6, 2013, PI Carbonetti provided the bar codes and
8 information for the DVD players found in these parcels to Target Department Store. *Id*. at 5. In
9 response, Target provided video and the receipt of the people who purchased the DVD players. *Id*.
10 PI Carbonetti stated that Glen Hunsberger and Manny Alkeine are seen on Target's video
11 surveillance in Columbus, Ohio on July 29, 2013, purchasing seven DVD players, bubble wrap,
12 black duct tape, gloves, a utility knife, a screwdriver, and shipping tape. *Id*.

13  On August 1, 2013, PI Carbonetti states that he and other law enforcement officers conducted
14 surveillance of Jennifer Peskett at the Emerald Post Office in Las Vegas, where she was awaiting
15 the arrival of the parcel that had been mailed to her from Ohio. *Id*. at 4. Peskett was driven by an
16 unknown white male in a black Dodge Magnum bearing California tag 5WKZ764. *Id*. When
17 Peskett and the male eventually left the post office, he dropped her off at her residence and drove
18 to 3161 Darby Gardens Court, where a black 2003 Cadillac Escalade bearing Montana tag 4C87177
19 was parked in the driveway. *Id*.

20  PI Carbonetti stated that a DMV check of the Dodge Magnum which drove Peskett to the
21 post office revealed that it was registered to Glen Hunsberger, at a California address, and that
22 Hunsberger also has an address of 537 Wheat Grass Rd., Stevensville, Montana 59870. *Id*. Further,
23 PI Carbonetti stated that Hunsberger was arrested by the Las Vegas Metropolitan Police in 1994 "for
24 possessing three kilos of cocaine and $33,000.00" in a Las Vegas hotel room. *Id*.

25  PI Carbonetti stated that a DMV check of the Escalade parked in the driveway of the Darby
26 Gardens Court residence revealed the owner as Kevin William Bishop, with an address in Missoula,
27 Montana. *Id*. In November 2011, Bishop was arrested by the Drug Enforcement Agency for
28

1  "Transport/Distribution of Cocaine." *Id*. PI Carbonetti further stated that records checks indicate that Bishop also has the address of 537 Wheat Grass Rd., Stevensville, Montana 59870. *Id*.

3  On August 6, 2013, PI Carbonetti observed a black Mercedes parked in front of the residence at 3161 Darby Gardens Court. *Id*. at 5. The registered owner of that vehicle was Manuelle Alkeine. *Id*. On August 8, 2013, PI Carbonetti observed a different black Mercedes parked in front of the residence at 3161 Darby Gardens Court. *Id*. The registered owner of that vehicle was Nicole Michele Marino. *Id*.

8  On August 22, 2013, a female who fit the description of Nicole Marino mailed a package at the Emerald post office. *Id*. The package was addressed to Casual Male, 21 Faunce Corner Rd., N. Dartmouth, MA 02747, and the return address on the package was PDQ Printing, 3820 S. Valley View, Las Vegas, NV 89103. *Id*. The next day, Postal Inspectors in conducted surveillance of the package being delivered to Casual Male. *Id*. A female employee of Casual Male, who was not working that day, picked up the package, left the store, drove to a parking lot, and met with a male identified as Jimmie Page. *Id*. Page took the package from the female, drove it to a residence, and dropped it off. *Id*. Page has sustained numerous arrests, four of which are for possession of a controlled substance. *Id*. PI Carbonetti submitted that, through his training and experience, he knew that drug dealers use "mules" to pick up and deliver drug packages in order to maintain their anonymity. *Id*.

19  On September 10, 2013, at approximately 2:20 p.m., PI Carbonetti observed Glen Hunsberger and a female who appeared to be Nicole Marino arrive at the 3161 Darby Gardens Court residence. *Id*. at 6. PI Carbonetti then drove to the Spring Valley post office. *Id*. At approximately 2:40 p.m., PI Carbonetti observed the same female, who appeared to be Nicole Marino, standing in line to mail the package at issue in the instant motion. *Id*. The package was mailed at 2:48 p.m. *Id*. PI Carbonetti seized the package and then drove to the Darby Gardens Court residence and observed Hunsberger and the female from the post office arrive at that location at approximately 3:10 p.m. *Id*.

27  . . . .

28  . . . .

- 4 -

### B. Parties' Briefing

Defendants submit that the affidavit in support of the search warrant failed to establish probable cause, as it relied mostly upon conclusory statements and PI Carbonetti's training and experience. Docket No. 181 at 3. Specifically, Defendants contend that PI Carbonetti was employed for 12 years as a Special Agent at the United States Secret Service prior to his one year of employment with the United States Postal Inspector and that his Secret Service experience is irrelevant to the instant case involving narcotics trafficking because the Secret Service "does not investigate controlled substance offenses[.]" *Id*. In support of their contention, Defendants point to the fact that PI Carbonetti stated in his affidavit that "[d]uring the course of working financial crimes cases, [he had] worked cases involving illegal narcotics." *Id*. Defendants further submit that Judge Foley could not appropriately evaluate PI Carbonetti's training and experience, as it was "ambiguous" in the affidavit. *Id*. at 4.

Defendants further submit that the facts stated in the affidavit are insufficient to establish probable cause to search the parcel. *Id*. at 4-7. In addition to the facts themselves, which Defendants set forth in the motion to suppress, Defendants rely upon a Massachusetts state court case wherein the Court found that probable cause did not exist for the instant search warrant and suppressed the evidence as it related to Defendants Navarro and Monteiro in a Massachusetts state case. *Id*.

Next, Defendants submit that PI Carbonetti's "misleading" statements in the affidavit justify a *Franks* hearing. *Id*. at 8-10. Defendants submit that PI Carbonetti "seemingly exaggerated his training and experience as to drug trafficking investigations." *Id*. at 9. Further, Defendants contend that PI Carbonetti's representation of Defendant Hunsberger's criminal history wherein he stated that Defendant Hunsberger had been arrested for a narcotics crime, but did not state that the charges were dismissed, was misleading. *Id*. at 5, 9. Without these misrepresentations, Defendants contend, probable cause would not have existed. *Id*. at 10.

In response, the United States submits that all defendants lack standing to challenge the search warrant. Docket No. 187 at 4-5. Specifically, the United States contends that none of the defendants was listed as the parcel's sender or recipient and none of them placed the package into

the mail stream or received it when it was delivered. *Id*. at 5. Therefore, the United States submits, no defendant in the instant case has a reasonable expectation of privacy in the parcel. *Id*.

The United States further contends that probable cause exists for the issuance of the search warrant. *Id*. at 6-11. The United States presents a list of facts submitted to Judge Foley[3] in the affidavit that, it submits, supports a finding of probable cause. *Id*. at 7-10. Additionally, the United States contends that Defendants have failed to make a substantial preliminary showing the PI Carbonetti intentionally or recklessly presented or omitted facts that caused the affidavit to be misleading and, therefore, are not entitled to a *Franks* hearing. Id at 12-13, 16-17. Finally, the United States submits that, if the Court finds both that Defendants have standing to challenge the search warrant and that probable cause did not exist, the good faith exception applies. *Id*. at 17.

In reply, Defendant Hunsberger argues that he has standing to challenge the search warrant. Docket No. 188 at 2-3.[4] Additionally, Defendants submit that the list of facts submitted by the United States in its response fails to establish probable cause. *Id*. at 3-5. Further, Defendants contend that the good faith exception does not apply because PI Carbonetti's reliance on the warrant was not objectively reasonable. *Id*. at 5-6. Specifically, Defendants state that PI Carbonetti knowingly or recklessly mislead Judge Foley by basing several conclusions regarding the habits of narcotics traffickers on his training and experience, and by stating that Defendant Hunsberger was arrested in 1994 for possession of cocaine and $33,000 but failing to include the fact that the charges

---

[3]Throughout its response, the United States calls Judge Foley a "magistrate." *See, e.g.*, Docket No. 187 at 4, 5, 11. Judge Foley is not a "magistrate" and, indeed, there have been no "magistrates" in the federal system for more than a quarter century. *See, e.g.*, *Taddeo v. American Invsco Corp.*, 2015 WL 751072, *2 n.2 (D. Nev. Feb. 20, 2015) (discussing *Williams v. City of Mesa*, 2010 WL 2803880, *2 n.1 (D. Ariz. July 15, 2010)).

In the Judicial Improvement Act of 1990, Congress changed the formal title of United States Magistrate to United States Magistrate Judge, effective December 1, 1990. *See Dixon v. Ylst*, 990 F.2d 478, 480 n. 1 (9th Cir.1993). Thus, a magistrate judge may be appropriately called judge or magistrate judge, but not magistrate. When parties choose to use titles in filings before this Court, the Court expects them to use correct titles.

[4]Defendants Navarro, Monteiro, and Peskett have joined Defendant Hunsberger's reply. Docket Nos. 189-193. Defendant Hunsberger's reply, however, discusses the facts regarding standing solely as they relate to him and not any of the other defendants. Docket No. 188 at 2-3. The facts relating to standing regarding the other defendants differ from those of Defendant Hunsberger; however, the joinders fail to discuss the facts as they relate to standing regarding the other defendants. *See* Docket Nos. 189, 190, 192.

were dropped and Defendant Hunsberger has sustained no drug-related convictions. *Id*. at 6. Additionally, Defendants submit that the affidavit is so lacking in probable cause that PI Carbonetti's reliance on it is objectively unreasonable. *Id*. Finally, Defendants reiterate their request for a *Franks* hearing. *Id*. at 8.

## II. ANALYSIS

### A. Standing

Since the Fourth Amendment protects people not places, the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Minnesota v. Olson*, 495 U.S. 91, 95 (1990) (citing *Katz v. United States*, 389 U.S. 347 (1967). In order to have "standing" or "capacity" to contest the legality of a search or seizure, a defendant must "demonstrate that [he has] a legitimate expectation of privacy in the items seized or the area searched." *United States v. Parks*, 285 F.3d 1133, 1141 (9th Cir. 2002) (quoting *United States v. Sarkisian*, 197 F.3d 966, 986 (9th Cir. 1999). "A defendant makes this demonstration by establishing a subjective expectation of privacy in the area searched, that is, one that society would recognize as objectively reasonable." *Parks*, 285 F.3d at 1141 (internal citations omitted). The defendant, if he has standing, then bears the burden of establishing, under the totality of the circumstances, that "the search or seizure violated his legitimate expectation of privacy in a particular place." *United States v. Davis*, 932 F.2d 752, 756 (9th Cir. 1991) (*citing Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980)). *See also United States v. Singleton*, 987 F.2d 1444, 1449 (9th Cir. 1993).

"It has long been established that an addressee has both a possessory and a privacy interest in a mailed package." *United States v. Jefferson*, 566 F.3d 928, 933 (9th Cir. 2009) (quoting *United States v. Hernandez*, 313 F.3d 1206, 1209 (9th Cir. 2002). Additionally, a person who mails a package has standing to contest a search of that package. *See Hernandez*, 313 F.3d at 1209. None of the defendants in the instant case is alleged to have mailed or received the package at issue in the search warrant. The affidavit states that Defendant Hunsberger drove the female who mailed the package to the post office, but the female is the one who entered the post office and stood in line to mail the parcel. Docket No. 181-1 at 6.

1    Defendants, therefore, have failed to demonstrate that they have a subjective expectation of
2 privacy in package, one that society would recognize as objectively reasonable.  Accordingly,
3 defendants have not shown that they have a legitimate expectation of privacy in the package, and
4 have not established standing to challenge the legality of the search.  Therefore, the Court
5 recommends **DENYING** Defendants' motion to suppress for lack of standing.

6    **B.    Probable Cause for Search Warrant**

7    Even if defendants did have standing to contest the search, which the Court finds they do not,
8 the Court finds that the affidavit established probable cause for the issuance of the search warrant.
9    Probable cause is "a fluid concept turning on the assessment of probabilities and the
10 particular factual context not readily, or even usefully, reduced to a neat set of legal rules," and its
11 existence must be determined by an analysis of the totality of the circumstances surrounding the
12 intrusion.  *Gates*, 462 U.S. at 232.  Probable cause does not deal with hard certainties, but with
13 probabilities.  *Id*. at 241; *see also Brinegar v. United States*, 338 U.S. 160, 175 (1949) (Probable
14 cause deals with "probabilities" which are not technical, but factual and practical considerations of
15 everyday life on which reasonable and prudent people, not legal technicians act).  The United States
16 Supreme Court has repeatedly emphasized that the probable cause standard is a "practical,
17 non-technical conception."  *Brinegar,* 338 U.S. at 175.
18    The *Gates* decision made it clear that a magistrate judge's decision regarding probable cause
19 should be given great deference.  The duty of a reviewing court is to insure that the magistrate judge
20 had a substantial basis for concluding that probable cause existed.  The Supreme Court has declined
21 to articulate a "neat set of legal rules" for evaluating probable cause, *Gates*, 462 U.S. at 232, and
22 instead has instructed magistrate judges to determine probable cause by considering the
23 "totality-of-the-circumstances," *Gates*, 462 U.S. at 230.  In issuing a search warrant, the magistrate
24 judge simply must determine whether there is a "fair probability" that evidence of a crime will be
25 found.  *Id*., 462 U.S. at 238, 246.   A reviewing court is required to examine all circumstances set
26 forth in the affidavit, and in doubtful cases, to give preference to the validity of the warrant.  *United
27 States v. Peacock*, 761 F.2d 1313, 1315 (9th Cir.), *cert. denied*, 474 U.S. 847 (1985).

28

1    It is well recognized that law enforcement officers can rely on their own experience and the
2  experience and information of other law enforcement officers in establishing probable cause. *United*
3  *States v. Butler*, 74 F.3d 916 (9th Cir. 1996). Similarly, "a magistrate [judge] may rely on the
4  conclusion of experienced law enforcement officers regarding where evidence of a crime is likely
5  to be found." *United States v. Fannin*, 817 F.2d 1379, 1381 (9th Cir. 1987). *See also United States*
6  *v. Ayers*, 924 F.2d 1468, 1479 (9th Cir. 1991) ("in weighing the evidence supporting a request for
7  a search warrant, a magistrate [judge] may rely on the conclusions of experienced law enforcement
8  officers regarding where evidence of a crime is likely to be found."). An officer need not include
9  *all* of the information in his possession to obtain a search warrant. An affidavit need only show facts
10 adequate to support the finding of probable cause. *United States v. Johns*, 948 F.2d 599, 605 (9th
11 Cir. 1991).

12   The affidavit in support of the search warrant establishes that experience and intelligence
13 gathered by the U.S. Postal Inspection Service (USPIS) have shown that Express Mail and Priority
14 Mail services are frequently utilized by drug traffickers for shipping controlled substances or
15 proceeds/payments, for reasons including speed, reliability, and free package tracking service.

16   The affidavit asserts that, on July 31, 2013, PI Carbonetti executed three search warrants on
17 three separate parcels that were mailed from three difference cities in Ohio to Las Vegas, Nevada,
18 and that Defendant Peskett and Defendant Alkeine were each receipients of one of the packages.
19 The affidavit further asserts that Peskett has a criminal history for Possession of Marijuana for Sale
20 and Cultivating Marijuana. Each of the three packages contained $15,000 in cash hidden inside
21 DVD players for a total of $45,000 in cash.

22   The affidavit establishes that, on August 6, 2013, PI Carbonetti provided the bar codes and
23 information for the DVD players found in these parcels to Target Department Store. In response,
24 Target provided video and the receipt of the people who purchased the DVD players. Defendants
25 Hunsberger and Alkeine are seen on Target's video surveillance in Columbus, Ohio on July 29,
26 2013, purchasing seven DVD players, bubble wrap, black duct tape, gloves, a utility knife, a
27 screwdriver, and shipping tape.

28

1    The affidavit asserts that, on August 1, 2013, PI Carbonetti and other law enforcement officers conducted surveillance of Defendant Peskett at the Emerald Post Office in Las Vegas, where she was awaiting the arrival of the parcel that had been mailed to her from Ohio. Defendant Peskett was driven by an unknown white male in a black Dodge Magnum bearing California tag 5WKZ764. When Defendant Peskett and the male eventually left the post office, he dropped her off at her residence and drove to 3161 Darby Gardens Court, where a black 2003 Cadillac Escalade bearing Montana tag 4C87177 was parked in the driveway.

A DMV check of the Dodge Magnum which drove Peskett to the post office revealed that it was registered to Glen Hunsberger, at a California address, and that Hunsberger also has an address of 537 Wheat Grass Rd., Stevensville, Montana 59870. Further, the affidavit asserts that Hunsberger was arrested by the Las Vegas Metropolitan Police in 1994 "for possessing three kilos of cocaine and $33,000.00" in a Las Vegas hotel room.

A DMV check of the Escalade parked in the driveway of the Darby Gardens Court residence revealed the owner as Kevin William Bishop, with an address in Missoula, Montana. In November 2011, Bishop was arrested by the Drug Enforcement Agency for Transport/Distribution of Cocaine. The affidavit establishes that records checks indicate that Bishop also has the address of 537 Wheat Grass Rd., Stevensville, Montana 59870, the same address as Defendant Hunsberger.

On August 6, 2013, PI Carbonetti observed a black Mercedes parked in front of the residence at 3161 Darby Gardens Court. The registered owner of that vehicle was Defendant Alkeine. On August 8, 2013, PI Carbonetti observed a different black Mercedes parked in front of the residence at 3161 Darby Gardens Court. The registered owner of that vehicle was Nicole Michele Marino.

The affidavit asserts that, on August 22, 2013, a female who fit the description of Nicole Marino mailed a package at the Emerald post office. The package was addressed to Casual Male, 21 Faunce Corner Rd., N. Dartmouth, MA 02747, and the return address on the package was PDQ Printing, 3820 S. Valley View, Las Vegas, NV 89103. The next day, Postal Inspectors conducted surveillance of the package being delivered to Casual Male. A female employee of Casual Male, who was not working that day, picked up the package, left the store, drove to a parking lot, and met with a male identified as Jimmie Page. Page took the package from the female, drove it to a

residence, and dropped it off. Page has sustained numerous arrests, four of which are for possession of a controlled substance. The affidavit asserts that drug dealers use "mules" to pick up and deliver drug packages in order to maintain their anonymity.

The affidavit establishes that, on September 10, 2013, at approximately 2:20 p.m., PI Carbonetti observed Defendant Hunsberger and a female who appeared to be Nicole Marino arrive at the 3161 Darby Gardens Court residence. PI Carbonetti then drove to the Spring Valley post office. PI Carbonetti then observed the same female, who appeared to be Nicole Marino, standing in line to mail the package at issue in the instant motion. The package was mailed at 2:48 p.m. PI Carbonetti seized the package and then drove to the Darby Gardens Court residence and observed Defendant Hunsberger and the female from the post office arrive at that location at approximately 3:10 p.m. This package, like the one from August 22, 2013 that was picked up by an off-duty employee of Casual Male and given to an entirely different person who took it to an entirely different location, was addressed to Casual Male, 21 Faunce Corner Rd., N. Dartmouth, MA 02747, and the return address on the package was PDQ Printing, 3820 S. Valley View, Las Vegas, NV 89103.

Reviewing the affidavit as a whole, applying the totality of the circumstances test, and showing the issuing judge great deference as the United States Supreme Court mandates, this court finds that the issuing judge had a substantial basis for concluding that probable cause existed for issuance of the search warrant. As the Supreme Court in *Gates* recognized "only the probability, and not a prima facie showing of criminal activity, is the standard of probable cause." 462 U.S. at 235. The affidavit presented to Judge Foley, taken as a whole, established the probability that evidence of illegal activity would be found in the package sought to be searched in the at-issue search warrant, based on factual and practical considerations of everyday life on which reasonable and prudent people act. Accordingly, the Court finds that the search warrant at issue was supported by probable cause, and recommends **DENYING** Defendants' motion to suppress the evidence recovered from the execution of the search warrant.

    **C.**    *Franks* **Hearing**

In *Franks v. Delaware*, 438 U.S. 154 (1978), the Supreme Court addressed at length whether a false statement by a government affiant invalidates a search warrant. *United States v.*

1  *Hammett*, 236 F.3d 1054, 1058 (9th Cir. 2001) (citation omitted). The Court held that, under certain
2  circumstances, a defendant is entitled to an evidentiary hearing to afford the defendant an
3  opportunity to attack the veracity of a facially-valid affidavit used to support a search warrant. A
4  defendant can challenge a facially valid affidavit by making a substantial preliminary showing that
5  "(1) the affidavit contains intentionally or recklessly false statements or misleading omissions, and
6  (2) the affidavit cannot support a finding of probable cause without the allegedly false information."
7  *United States v. Reeves*, 210 F.3d 1041, 1044 (9th Cir. 2000) (*citing United States v. Stanert,* 762
8  F.2d 775, 780-81 (9th Cir. 1985)).

9        Before a criminal defendant is entitled to go beneath the search warrant to obtain additional
10  information concerning the police investigation and an informant, he or she is required to make a
11  substantial threshold showing. A defendant's preliminary showing cannot be "merely conclusory."
12  *Reeves*, 210 F.3d at 1044. "There must be allegations of deliberate falsehood or reckless disregard
13  for the truth, and these allegations must be accompanied by an offer of proof." *Hammett*, 236 F.3d
14  at 1058 (*quoting Franks*, 438 U.S. at 171). "To justify a hearing, a defendant must make specific
15  allegations, allege a deliberate falsehood or reckless disregard for the truth, and accompany such a
16  claim with a detailed offer of proof." *United States v. Craighead*, 539 F.3d 1073, 1080 (9th Cir.
17  2008) (citation omitted). The movant bears the burden of proof and must make a substantial
18  showing to support both elements. *See United States v. Garcia–Cruz*, 978 F.2d 537, 540 (9th
19  Cir.1992).

20        Intentional or reckless omissions may provide grounds for a *Franks* hearing. *United States*
21  *v. Jawara*, 474 F.3d 565 (9th Cir. 2007)); *see also United States v. Stanert*, 762 F.2d 775, 781 (9th
22  Cir. 1985) ("By reporting less than the total story, an affiant can manipulate the inferences a
23  magistrate [judge] will draw. To allow a magistrate [judge] to be misled in such a manner could
24  denude the probable cause requirement of all real meaning"). Although "[c]lear proof of deliberate
25  or reckless omission is not required," a "[d]efendant 'must offer direct evidence of the affiant's state
26  of mind or inferential evidence that the affiant had obvious reason for omitting facts in order to prove
27  a deliberate falsehood or reckless disregard." *United States v. Souffront*, 338 F.3d 809, 822-23 (7th
28  Cir. 2003). A defendant must also show that the "affidavit, once corrected and supplemented,"

- 12 -

would not "provide ... a substantial basis for concluding that probable cause existed." *Stanert*, 762 F.2d at 782. "[T]he omission rule does not require an affiant to provide general information about every possible theory, no matter how unlikely, that would controvert the affiant's good-faith belief that probable cause existed for the search." *Craighead* 539 F.3d at 1081.

Here, Defendants have not made the substantial preliminary showing necessary for a *Franks* hearing. Their allegations are merely conclusory, and are not accompanied by an offer of proof. *See Craighead*, 539 F.3d at 1073. Instead of an offer of proof, they simply claim that PI Carbonetti's training and experience were not in the area of narcotics investigations and, therefore, he could not have had training or experience relevant to this case. They further state that PI Carbonetti's statement that Defendant Hunsberger sustained a previous narcotics arrest somehow was meant to mislead Judge Foley into believing he had been convicted. Defendants have failed to meet even the first *Franks* prong. Accordingly, the Court denies the request for a *Franks* hearing.

### D.   Good Faith Exception

The United States submits that the good faith exception applies, even if the Court finds probable cause lacking. Defendants contend that it does not.

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To comply with the Fourth Amendment, a search warrant must describe the place to be searched and things to be seized with particularity, and there must be probable cause to seize the things specified in the warrant. *See United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702–03 (9th Cir. 2009).

The exclusionary rule prohibits the government from using illegally seized evidence against the victim of the unlawful search. *See United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007) (citing *Wong Sun v. United States*, 371 U.S. 471, 484 (1963)). There is a good faith exception to the exclusionary rule, however, for searches "conducted in good faith reliance upon an objectively reasonable search warrant." *Id*. at 1135-36 (citing *United States v. Leon*, 468 U.S. 897, 925 (1984)). This court may first determine whether the good faith exception applies before addressing "whether the affidavit supported probable cause." *Id*. at 1136 (citing *Leon*, 468 U.S. at 923-25). "[T]he

1   government bears the burden of proving that officers relied on the search warrant 'in an objectively
2   reasonable manner.'" *United States v. SDI Future Health*, 568 F.3d 684, 706 (2009) (quoting *Crews*,
3   502 F.3d at 1136).

4       For the good faith reliance exception to apply, the officers must have relied on the search
5   warrant in an objectively reasonable manner. *United States v. Clark*, 31 F.3d 831, 835 (9th Cir.
6   1994). The affidavit "must establish at least a colorable argument for probable cause" for the
7   exception to apply. *United States v. Luong*, 470 F.3d 898, 903 (9th Cir. 2006). Therefore, if there
8   is a colorable argument that the search of the package was supported by probable cause, the officer's
9   reliance on the search warrant was objectively reasonable. This ends the inquiry without having to
10  belabor the issue of whether the affidavit stated probable cause. There are four circumstances in
11  which the good faith exception does not apply because reliance is *per se* unreasonable: (i) where an
12  affiant misleads the issuing judge by making a false statement or recklessly disregarding the truth
13  in making a statement; (ii) where the judge wholly abandons her judicial role in approving the
14  warrant, acting only as a "rubber stamp" to the warrant application rather than as a neutral and
15  detached official; (iii) where the warrant is facially deficient in detail as to the place to be searched
16  or the things to be found that the officers could not reasonably presume it to be valid; or (iv) where
17  the affidavit upon which the warrant is based is so lacking in indicia of probable cause that no
18  reasonable officer could rely upon it in good faith. *Leon*, 468 U.S. at 923-26.

19      In this instance, the Court has already rejected Defendants' arguments that PI Carbonetti's
20  statements were misleading, and that the affidavit on its face was so lacking in indicia of probable
21  cause as to render reliance upon it objectively unreasonable. Therefore, the Court finds that, even
22  if Defendants have standing to challenge the search warrant, and probable cause did not exist, the
23  good faith exception applied. *See United States v. Crews*, 502 F.3d 1130, 1136-37 (9th Cir. 2007).
24  . . . .
25  . . . .
26  . . . .
27  . . . .
28  . . . .

## ORDER

Based on the foregoing and good cause appearing therefore,

IT IS HEREBY ORDERED that Defendants' request for a *Franks* hearing is **DENIED**.

IT IS FURTHER ORDERED that Defendant Hunsberger's motion to strike, Docket No. 196, is **DENIED**.

## RECOMMENDATION

Based on the foregoing and good cause appearing therefore,

IT IS RECOMMENDED that Defendants' Motion to Suppress, Docket No. 181, be **DENIED** in its entirety.

## NOTICE

Pursuant to Local Rule IB 3-2 **any objection to this Report and Recommendation must be in writing and filed with the Clerk of the Court within 14 days of service of this document.** The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This Circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 23rd day of September, 2016.

NANCY J. KOPPE
United States Magistrate Judge